CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2014

JULIA C. DUDLEY, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEJUANA ALICE MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:13cv137 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| WELLS FARGO BANK, NATIONAL | ) | |
| ASSOCIATION, | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

This is an action by Plaintiff, Lejuana Morgan ("Morgan"), alleging that her former employer, Wells Fargo Bank, N.A. ("Wells Fargo"), violated the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12117 (West 2014), by terminating her because of her alleged disability, alcoholism, and by retaliating against her for exercising her rights under the Act. Wells Fargo has moved for summary judgment on the grounds that it terminated her for a legitimate non-discriminatory and non-retaliatory reason—because she failed to adhere to Wells Fargo's mandatory attendance policy. The court agrees and therefore grants Wells Fargo's motion for summary judgment.

I.

Wells Fargo is a national bank that employs over 270,000 employees. In January 2011, Wells Fargo hired Morgan to work at its call center in Roanoke, VA. Wells Fargo considers employee attendance essential to the call center's productivity[1] and claims it subjects all

---

[1] Morgan understood that her attendance was essential to the performance of her job duties and that each team member depended upon one another. One team member's unscheduled absence

employees to a mandatory attendance policy.[2] Under that policy, each employee receives a forty (40) hour attendance account balance for *unscheduled* absences. Each time an employee misses work without first obtaining approval from a supervisor, the hours missed are deducted from that employee's attendance account. Once an employee's attendance account balance reaches negative forty-one (-41) or lower, Wells Fargo considers the employee to be in violation of its mandatory attendance policy and subject to immediate termination.

An employee whom Wells Fargo considers to be in violation of its attendance policy, however, may come back into compliance if the employee seeks and obtains "approval" for enough of his or her unscheduled absences—i.e., if he or she gets enough unscheduled absences excused by Wells Fargo. Wells Fargo has established policies that allow excusal for medical, short and long-term disabilities, FMLA, and other similar purposes. To have such an unscheduled absence excused, the employee must call either Wells Fargo's Leave Management team or Accommodations team, depending on the reason for the absence,[3] and request that it excuse the absence. After making the request, the employee must follow-up by submitting the requisite paperwork. If Wells Fargo finds the request justified under its established policies, it will excuse the absence, and the absence will not count against the employee's attendance account balance.

Like all employees, Morgan began her employment with a positive forty (40) attendance account balance. However, Morgan quickly diminished her account balance to zero. Morgan's

---

placed additional strain on the other employees who would have to cover the absentee's daily responsibilities. Morgan's Dep. 48:1-6, 55:9-56:6; Neal's Dep. 14:1-15:4.

[2] Morgan knew that she was subject to the attendance policy and could be terminated for violating it. Morgan's Dep. 56:7-23.

[3] Leave Management handles requests for short-term disability leave, long-term disability leave, certified medical leave, and FMLA leave. Accommodations handles requests for medical accommodations and medical leave that does not qualify as certified medical leave.

2

supervisor, Jordan Neal, spoke with Morgan and warned her of the consequences of violating the attendance policy, which Morgan understood. Morgan continued to miss work. During the last week of April 2011, Morgan missed three consecutive days (April 28 to April 30), her ninth, tenth, and eleventh unscheduled absences during a ten week period. These three absences reduced Morgan's attendance account balance to negative forty-five (-45), which caused her to be in violation of the mandatory attendance policy.

Though Morgan showed up for work on May 1, she did not request that Leave Management or Accommodations excuse the problematic absences. Morgan was off on May 2, and once again missed work without permission the following day, May 3, reducing Morgan's attendance account balance even further. As a consequence, that same day, Morgan's supervisor, Neal, sought and obtained Human Resource's approval to terminate Morgan.[4] The next day, Neal called Morgan, who was again absent, to inform her that she was terminated for violating the mandatory attendance policy. When Morgan answered, Morgan told Neal that she was in the process of checking into a rehabilitation treatment center for alcoholism and had actually requested leave the day before with Leave Management. This was the first time that Neal (or any other supervisor) was ever told or made aware that Morgan was struggling with alcoholism and seeking treatment. Morgan's Dep. 120:4-122:2; Neal's Dep. 15:5-25, 20:7-25.

Under the circumstances, Human Resources rescinded the termination and granted Morgan leave to seek treatment. Neal called Morgan and informed her that she would remain an employee, and Wells Fargo would reevaluate her absences after she received treatment. Wells

---

[4] Neal had the authority to terminate and discipline Morgan on her own accord, but company policy provided that she should first ensure that the termination was warranted by contacting Human Resources. See Neal's Dep. 11:9-13; Mboss' Dep. 10:13-16.

3

Fargo excused Morgan's May 3 to July 5 absences as short-term disability leave and her July 6 to July 18 absences as certified medical leave.

On July 19, Morgan returned to work. When she returned, Neal told Morgan that she needed to contact Leave Management to establish whether any of her absences before May 1 could be excused. Otherwise, as Neal made plain, Morgan would remain in violation of the mandatory attendance policy and subject to immediate termination. Morgan then contacted the Leave Management team and requested that it excuse her April 29 and April 30 absences as certified medical leave, submitting a cryptic doctor's note in support that read in its entirety: "Please excuse the patient from work on April 29, 30, 2011." ECF No. 18-10.

Leave Management informed Morgan that she did not qualify for certified medical leave because an employee qualifies for certified medical leave only after her condition causes her to miss five consecutive workdays (or seven consecutive calendar days). ECF No. 16-3 at 16 (Wells Fargo's Team Member Handbook). Leave Management instead redirected Morgan to the "Accommodations team." It advised her that although she did not qualify for certified medical leave, she should contact the Accommodations team, which would review her doctor's note. Morgan did not contact them. Morgan now admits that she did not actually visit a doctor on either day but was instead at home drinking. Morgan's Dep. 92:5-20, 99:14-102:20. Because Morgan failed to have Wells Fargo excuse her problematic absences, she remained in violation of its attendance policy and subject to immediate termination. As a consequence, Neal sought and obtained Human Resources' authorization to terminate Morgan, and Wells Fargo terminated her on August 10, 2011.

II.

Morgan claims that Wells Fargo violated the ADA by terminating her employment because of her alleged disability and by retaliating against her for requesting an accommodation under the ADA. In response, Wells Fargo has proffered a legitimate non-discriminatory and non-retaliatory explanation for Morgan's termination. Because Morgan cannot show that the explanation is merely a pretext for discrimination (or retaliation), the court will enter summary judgment for Wells Fargo.[5]

A.

In the absence of direct evidence, to prevail on an ADA discrimination claim, Morgan must prove intentional discrimination under the proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, Morgan must first establish a prima facie case of discrimination. If Morgan establishes her prima facie case, the burden of production shifts to Wells Fargo to show a legitimate, non-discriminatory reason for its actions. If Wells Fargo produces a legitimate, non-discriminatory reason for its actions, then Morgan must produce evidence that Wells Fargo's asserted reasons are a mere pretext for its true discriminatory motives and that its actions were really based on Morgan's alcoholism. Id. at

---

[5] An award of summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating after adequate time for discovery the pleadings, depositions, interrogatories, admissions, and other affidavits show that the nonmoving party will be unable to prove an essential element of his or her case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("complete failure of proof concerning an essential element . . . renders all other facts immaterial"). Facts are viewed in the light most favorable to the non-moving party. See Lee v. York County Sch. Div., 484 F.3d 687, 693 (4th Cir. 2007). To withstand a motion for summary judgment, the nonmoving party must introduce specific facts indicating that he or she will in fact be able to prove the essential elements at trial. The nonmoving party may not rely on a mere scintilla of evidence but must provide sufficient evidence such that a reasonable jury could find in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

802–05. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." Farrell v. Butler Univ., 421 F.3d 609, 613 (7th Cir. 2005). Morgan can show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997); see White v. W.R. Winslow Mem'l Home, Inc., 211 F.3d 1266 (4th Cir. 2000). However, mere conjecture or conclusory allegations of discrimination are not enough to show pretext. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999).

Assuming that Morgan has produced sufficient evidence to establish her prima facie case, the burden of production shifted to Wells Fargo to provide a legitimate, non-discriminatory explanation. Wells Fargo has done so, explaining that its actions were justified because Morgan's excessive un-excused absenteeism was a violation of company policy and detrimental to its operations. With Wells Fargo having produced a sufficient explanation, Morgan must show that its explanation is merely a pretext and that Wells Fargo actually terminated her because of her disability. Morgan fails to do so.

Morgan does not contest most of the facts undergirding Wells Fargo's explanation. Morgan does not contest: that she missed over eighty-eight hours of work during a ten-week period or that the absences reduced her attendance account balance to negative forty-five (-45); that she knew of the consequences of violating the mandatory attendance policy or that Neal reminded her of the consequences with a warning; that she did not seek to have any of her pre-May 1 unscheduled absences excused before Neal called to terminate her on May 4; that Neal did not learn of Morgan's alcoholism before that phone call; or that Morgan did not follow up with the Accommodations team.

Morgan's only argument[6] is essentially that Wells Fargo treated similarly situated employees differently. The argument, however, is problematic in at least two important respects. First, Morgan marshals no evidence to support it. Instead, she simply makes the bare allegation that Wells Fargo deviated from its policies and discriminated against her when Leave Management failed to excuse her April 29 and April 30 absences as certified medical leave[7]—an allegation that is at odds with Wells Fargo's evidence.[8] Second, it would be purely speculative to conclude that Wells Fargo would not have accommodated her had she followed up with the Accommodations team as directed. Morgan did not seek to have her absence excused by the very department that she admits was capable of excusing her absence. See Morgan's Opp'n Br. at 20 ("If it is a leave less than seven consecutive days, then [Accommodations] might look at that. If it's over seven consecutive days, that would be more of a certified medical leave handled through leave[] management."). Accordingly, even assuming Morgan has established a prima facie case, which is a dubious assumption, Morgan has failed to demonstrate that Wells Fargo's

---

[6] Morgan also asserts that Neal had a "particularized animus" against her and that this was a "personal thing." Morgan's Opp'n Br. at 36. However, the ADA prohibits disability discrimination; it is not a code of conduct governing personal conflicts.

[7] Morgan claims this also presents a cognizable failure to accommodate claim, which she alleges for the first time in her opposition briefs. To the extent Morgan is now requesting leave to amend her pleadings, the court finds that request unwarranted at this late date and in any event futile. Here, Morgan did not request an accommodation until May 3 when she called Leave Management, and Wells Fargo prospectively granted that request. An employer is not required to retroactively accommodate an employee. Leschinskey v. Rectors & Visitors of Radford Univ., 2011 WL 5029813, at *2 (W.D. Va. Oct. 24, 2011). See Office of Senate Sgt. at Arms v. Office of Senate Fair Employment Practices, 95 F.3d 1102, 1107 (Fed Cir. 1996) (the ADA does not require a "retroactive accommodation including a fresh start before [the employee] request[s] accommodation for his disability.")

[8] Had Wells Fargo processed her request to excuse her past absences as certified medical leave, it would have learned that Morgan was at home drinking on the days she sought certified medical leave.

7

proffered legitimate, nondiscriminatory reasons for terminating her are pretextual, such that a rational factfinder could find them unworthy of credence.[9]

B.

Morgan also claims that Wells Fargo retaliated against her for requesting an accommodation under the ADA. In the absence of direct evidence, Morgan must prove retaliatory motive by again adhering to the McDonnell Douglas proof scheme.[10] The court finds that for the same reasons that Morgan is unable to show that Wells Fargo's non-discriminatory reason for terminating her is a pretext for discrimination, Morgan cannot show that the explanation is a pretext for retaliation.

III.

In sum, Morgan's supervisor called to terminate her because she was in violation of Wells Fargo's mandatory attendance policy. When Wells Fargo learned that Morgan had actually been missing work because she was struggling with alcoholism and seeking treatment, it rescinded Morgan's termination and granted her request for leave to obtain that treatment. When Morgan returned, she had the opportunity to have some of her problematic absences excused, but

---

[9] Morgan also alleges that the temporal proximity of her termination (immediately after she informed Wells Fargo of her disability and request for an accommodation) is evidence of pretext. However, "[m]ere assertions of questionable timing, 'in and of themselves are simply insufficient to counter unrebutted evidence of legitimate, nondiscriminatory reasons for' being fired. Kothe v. Cont'l Teves, Inc., 461 F. Supp. 2d 466, 477 (W.D. Va. 2006) (citing Dugan v. Albemarle County Sch. Bd., 293 F.3d 716, 722 (4th Cir. 2002)). At a fundamental level, it is difficult—and indeed, illogical—to argue that Wells Fargo's decision to call Morgan for the sole purpose of terminating her was transformed into an act of retaliation simply because Morgan was able to disclose her whereabouts before Wells Fargo was able to disclose its predetermined decision.

[10] The court assumes without deciding that Morgan has established her prima facie case under that scheme.

8

she inexplicably failed to contact the Accommodations team, to which she was directed, to make the request. Accordingly, she remained in violation of the mandatory attendance policy, and Wells Fargo finally terminated her. Because Morgan was terminated for a legitimate, non-discriminatory and non-retaliatory reason, the court grants Wells Fargo's motion for summary judgment pursuant to Fed. R. Civ. P. 56.

**ENTER**: February 21, 2014.

_____

UNITED STATES DISTRICT JUDGE